IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ADVANCED ELECTROLYTE TECHNOLOGIES LLC & UBE INDUSTRIES, LTD. | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 1:17-CV-30 |
| ESDI LLC, SAMSUNG SDI CO. LTD., SAMSUNG SDI AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., J & J INTERNATIONAL, INC., | § § § § § § § § | **Jury Trial Demanded** |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Advanced Electrolyte Technologies LLC and Ube Industries, Ltd. brings this action against ESDI LLC, Samsung SDI Co. Ltd., Samsung SDI America, Inc., Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and J & J International, Inc. and alleges as follows:

## THE PARTIES

1.     Plaintiff Advanced Electrolyte Technologies LLC ("AET") is a Delaware corporation with its principal place of business at 28345 Beck Rd., Suite 306, Wixom, Michigan 48393.

2.      Plaintiff Ube Industries, Ltd. ("UBE" and together with AET, the "Plaintiffs") is a Japanese corporation with its principal place of business at Seavans North Building, 1-2-1 Shibura, Minato-ku, Tokyo 105-8449, Japan.

3.     Defendant ESDI LLC ("ESDI") is a Texas limited liability corporation with its principal place of business at 8900 Shoal Creek Blvd, Suite 113, Austin, Texas 78757.  ESDI may be served with process by serving its registered agent, Robert Vielock, 3504 Enfield Rd., Austin, Texas 78703.

4.     Defendant Samsung SDI Co., Ltd. ("Samsung SDI") is a Korean corporation headquartered at 150-20, Gongse-ro, Giheung-gu, Yongin-si, Gyeonggi-do, Korea.

5.     Defendant Samsung SDI America, Inc. ("Samsung SDI America") is a California corporation with its principal place of business at 3655 North First St., San Jose, California. Samsung SDI America is a wholly owned subsidiary of Defendant Samsung SDI.

6.     Defendant Samsung Electronics Co., Ltd. ("SEC") is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at Samsung Main Building, 250, Taepyeongno 2-ga, Jung-gu, Seoul 100-742, Republic of Korea.

7.     Defendant Samsung Electronics America, Inc. ("SEA") is a subsidiary of SEC, and is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660-2106. SEA may be served with process by serving its registered agent, CT Corporation System, 350 N. Saint Paul St., Dallas, Texas 75201-4201.

8.     Defendant J & J International Inc. ("J&J") is a New Jersey Company with its principal place of business at 8 York Ave, West Caldwell, New Jersey 07006.  J & J International Inc. may be served with process by serving its registered agent, Domg Suk Yang, 2 Tamarack Dr., Livingston, New Jersey 07039.

## JURISDICTION AND VENUE

9.      This action arises under the patent laws of the United States, Title 35 United States Code, particularly §§ 271 and 281. This Court has jurisdiction over the claim for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

10.     On information and belief, Defendant Samsung SDI owns, directs, and controls Samsung SDI America.  Samsung SDI is an infringer of Plaintiffs' patents in this judicial district as further explained herein.  On information and belief, Samsung SDI sells infringing batteries to computer manufacturer(s) and ESDI in this judicial district.  Accordingly, the Court has specific and/or general personal jurisdiction over Samsung SDI.

11.     On information and belief, Defendant Samsung SDI America has maintained sales and marketing personnel in this judicial district, with battery sales responsibilities for computer manufacturer(s).  On information and belief, Samsung SDI and Samsung SDI America share one or more officers who serve simultaneously in both Samsung SDI and Samsung SDI America.  The purpose of Samsung SDI America is to sell rechargeable lithium-ion batteries to device manufacturers.  Samsung SDI America is an infringer of Plaintiffs' patents in this judicial district as further explained herein.  On information and belief, Samsung SDI America imports, sells, and offers to sell infringing batteries to computer manufacturer(s), ESDI, and others in this judicial district.  Accordingly, the Court has specific and/or general personal jurisdiction over Samsung SDI America.

12.     On information and belief, Defendant SEC is an infringer of Plaintiffs' patents in this judicial district as it sells or imports infringing products in this judicial district.  Accordingly, the Court has specific and/or general personal jurisdiction over SEC.

13.     On information and belief, Defendant SEA is an infringer of Plaintiffs' patents in this judicial district as it sells or imports infringing products in this judicial district.  Accordingly, the Court has specific and/or general personal jurisdiction over SEA.

14.     On information and belief, Defendant J&J is an infringer of Plaintiffs' patents in this judicial district as it sells infringing products in this judicial district.  Accordingly, the Court has specific and/or general personal jurisdiction over J&J.

15.     This Court has specific and general personal jurisdiction over Defendant ESDI LLC who resides in this District and has committed acts of infringement in this District.

16.     Venue is proper in this Court under Title 28 United States Code §§ 1391(b) and (c) and 1400(b).

## BACKGROUND

17.     A common issue that consumers experience with their electronic devices (such a phones, tablets, and toys) is that the batteries that power them can hold less and less of a charge over time and usage.

18.     This issue comes about because, generally speaking, the energy storage capacity of a lithium-ion battery cell degrades after each successive discharge/recharge cycle.

19.     This loss is cumulative.  After a number of discharges/recharge cycles, the capacity of a lithium-ion battery could be 30% to 50% less than it was when it was new.

20.     This issue forces the consumer to make do with an impaired device (e.g., one that must frequently be connected to a battery charger) or bear the expense of replacing the battery.

21.     As such, battery life is an important sales and marketing issue for electronic devices such as those products accused of infringement herein.

4

## UBE and AET

22.    UBE's scientists have been widely recognized around the world for their pioneering work in developing electrolytes that optimize battery performance.

23.    In the late 1990's and early 2000's, Ube Industries' scientists invented various battery electrolytes which, among other things, remarkably improved the long term storage capacity of lithium batteries by protecting them from the chemical processes that cause storage capacity loss.

24.    For many years, UBE sold electrolyte to various premium lithium battery manufacturers in Asia.

25.    In 2011, Advanced Electrolyte Technologies, LLC was founded as a joint venture between Ube Advanced Material, Inc. (a subsidiary of UBE) and The Dow Chemical Company to manufacture and market electrolytes for lithium batteries.  AET's goal was to develop the North American market for electrolyte.

## The Technology

26.    Today, rechargeable lithium batteries are found in a wide variety of products, including computers, smartphones, power tools, vehicles, and countless other types of electronic devices.

27.    Rechargeable lithium batteries are also referred to as "secondary" lithium batteries. While lithium batteries that do **not** recharge are also referred to as "primary" lithium batteries.

28.    Generally speaking, there are several major components of a battery.  Two significant components are the anode and the cathode (collectively called "electrodes"). These are each made of different chemicals and are connected to the two metal terminals of the battery.

29.    Another major component is the electrolyte.  The electrolyte is a chemical medium between the anode and cathode and allows for the flow of lithium ions between them.

30.    Usually a physical separator made out of polymer is also inserted between the anode and cathode to stop them from making physical contact. The polymer has very small holes to allow for the flow of lithium ions through the separator.

31.    Thin metal sheets (sometimes called current collectors) are attached to the anode and cathode and serve as (or are directly connected to) battery terminals.



A/B: Current collectors; negative (A), positive (B)

**Fig. 1**

32.    Figure 1 above shows a generic example of a lithium-ion battery.

**The Defendants**

33.    ESDI is a franchisee of Samsung SDI.  ESDI promotes and sells a wide range of infringing lithium-ion batteries made by Samsung SDI, including custom made batteries.

34.    Some time ago, UBE and Samsung SDI began discussions about UBE's patented electrolytes and batteries.

35.     Over the course of time, Samsung's scientists learned about UBE's patented electrolytes and batteries and their benefits.

36.     Instead of buying all of the patented electrolyte from UBE or taking a license to UBE's patents as it should have, Plaintiffs discovered that Samsung repeatedly copied UBE's patented formulas and used the formulas in Samsung's lithium-ion batteries which were incorporated into various consumer devices such as Samsung branded phones, tablets, and laptops.

37.     Additionally, Samsung provided infringing batteries to laptop and other electronic device manufacturers who sold those infringing batteries in the United States.

38.     J&J sells replacement Samsung batteries under the name, and at the domain, "SamsungParts.com."

## The Patents

39.     On March 7, 2000, U.S. Patent No. 6,033,809 ("the '809 patent") entitled "Lithium Secondary Battery and Electrolyte Thereof" was duly and legally issued. A true and correct copy of the '809 patent is attached as Exhibit A.

40.     On September 25, 2013, a supplemental reexamination was requested with respect to the '809 patent.

41.     On August 27, 2014, reexamination certificate no. US 6,033,809 C1 was issued, confirming the patentability of various claims and adding additional new claims.

42.     On August 9, 2005, U.S. Patent No. 6,927,001 ("the '001 patent") entitled "Non-Aqueous Electrolytic Solution and Lithium Secondary Battery" was duly and legally issued.  A true and correct copy of the '001 patent is attached as Exhibit B.

43.     UBE is the owner and assignee of the '809 and '001 patents.  AET is the exclusive licensee of the '809 and '001 patents.

44. Together, UBE and AET have all right, title, and interest in the '809 and '001 patents, including the right to sue and collect damages for past, present, and future infringement and to seek legal, equitable, and injunctive relief.

45. Prior to filing this suit, UBE and AET complied with the marking requirement pursuant to 35 U.S.C. § 287(a) and are thus entitled to recover past damages for the Defendants' infringement of the '809 and '001 patents, as more fully described below.

### COUNT I:  FIRST CLAIM FOR RELIEF
### (INFRINGEMENT OF THE '809 PATENT)

46. The Plaintiffs incorporate all of their previous allegations by the reference.

### The 809 Accused Products

47. At least the following batteries (the "809 Accused Products") meet all the limitations, either literally or through the doctrine of equivalents, of at least Claim 2 of the '809 Patent:

   a. The ICP666480 battery (used by at least computer manufacturers and electronic device retailers) as shown in Exhibit C hereto;

   b. The ICP596080C (used by at least computer manufacturers and electronic device retailers) battery as shown in Exhibit D hereto;

   c. The ICR18650-32A (used by at least computer manufacturers and electronic device retailers) the battery as shown in Exhibit E hereto;

   d. The ICP4480A0A battery (used at least in the Samsung Chromebook 3) as shown in Exhibit F hereto;

   e. The ICP596080E battery (used in at least the Samsung Notebook 7 Spin) as shown in Exhibit G hereto;

      f.      The PGF434292 battery (used in at least the Samsung Notebook 9 Spin) as shown in Exhibit H hereto;

      g.      The Galaxy S3 battery as shown in Exhibit I hereto;

      h.      The Galaxy S5 battery as shown in Exhibit J hereto;

      i.      The Galaxy S5 Mini battery as shown in Exhibit T hereto;

      j.      The Galaxy Note 5 battery as shown in Exhibit K hereto;

      k.      The Galaxy S6 battery as shown in Exhibit L hereto;

      l.      The Galaxy S6 Edge Plus battery as shown in Exhibit M hereto;

      m.      The Galaxy S7 battery as shown in Exhibit N hereto;

      n.      The Galaxy S7 Edge battery as shown in Exhibit O hereto;

      o.      Any other lithium secondary battery that has a non-aqueous electrolyte as more fully described and claimed in the '809 patent.

**Samsung SDI is an Infringer of the '809 Patent**

48.     Samsung SDI is a direct infringer of the '809 patent because it at least sells, offers to sell, and/or imports at least the 809 Accused Products in the United States.

49.     Samsung SDI has had actual knowledge of, or was willfully blind towards, the '809 patent by way of communications with UBE as well as through Samsung SDI's own patents that reference the '809 patent.

50.     Since becoming aware of, or being willfully blind towards, the '809 patent, Samsung SDI's battery sales, offers to sell batteries, battery advertising, communications with, and management of Samsung SDI America has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused,

directed, and/or influenced the direct infringement of the '809 patent (either literally or under the doctrine of equivalents) by Samsung SDI America at least as set forth below.

51.     Since becoming aware of, or being willfully blind towards, the '809 patent, Samsung SDI's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with SEC has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '809 patent (either literally or under the doctrine of equivalents) by SEC at least as set forth below.

52.     Since becoming aware of, or being willfully blind towards, the '809 patent, Samsung SDI's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with SEA has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '809 patent (either literally or under the doctrine of equivalents) by SEA at least as set forth below.

53.     Since becoming aware of, or being willfully blind towards, the '809 patent, Samsung SDI's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with computer manufacturers and electronic device retailers has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '809 patent (either literally or under the doctrine of equivalents) by computer manufacturers and electronic device retailers who use, sell, offer to sell, or import one or more of the 809 Accused Products.

54.     Since becoming aware of, or being willfully blind towards, the '809 patent, Samsung SDI's battery sales, offers to sell batteries, battery advertising, communications with,

and cooperation with J&J and/or ESDI have intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '809 patent (either literally or under the doctrine of equivalents) by J&J and/or ESDI who import, sell, and/or offer to sell one or more of the 809 Accused Products.

55.    At least for these reasons, Samsung SDI is liable for inducing infringement of the '809 patent, either literally or under the doctrine of equivalents.

**Samsung SDI America is an Infringer of the '809 Patent**

56.    Samsung SDI America is a direct infringer of the '809 patent because it at least sells, offers to sell, and/or imports at least the 809 Accused Products in the United States.

57.    Samsung SDI America has had actual knowledge of the '809 patent at least as early as the filing or service of this complaint on itself or another defendant, and/or by virtue of its employees shared with Samsung SDI.

58.    Since becoming aware of, or being willfully blind towards, the '809 patent, Samsung SDI America's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with Samsung SDI has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '809 patent (either literally or under the doctrine of equivalents) by Samsung SDI at least as set forth above with respect to Samsung SDI's direct infringement.

59.    Since becoming aware of, or being willfully blind towards, the '809 patent, Samsung SDI America's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with SEC has intentionally, actively, knowingly, and willfully invited,

enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '809 patent (either literally or under the doctrine of equivalents) by SEC at least as set forth below.

60.    Since becoming aware of, or being willfully blind towards, the '809 patent, Samsung SDI America's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with SEA has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '809 patent (either literally or under the doctrine of equivalents) by SEA at least as set forth below.

61.    Since becoming aware of, or being willfully blind towards, the '809 patent, Samsung SDI America's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with computer manufacturers and electronic device retailers has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '809 patent (either literally or under the doctrine of equivalents) by computer manufacturers and electronic device retailers who use, sell, offer to sell, or import one or more of the 809 Accused Products.

62.    Since becoming aware of, or being willfully blind towards, the '809 patent, Samsung SDI America's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with J&J and ESDI have intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '809 patent (either literally or under the

doctrine of equivalents) by J&J and ESDI who import, sell, and/or offer to sell one or more of the 809 Accused Products.

63.    For at least for these reasons, Samsung SDI America is liable for inducing infringement of the '809 patent, either literally or under the doctrine of equivalents.

### SEC is an Infringer of the '809 Patent

64.    SEC is a direct infringer of the '809 patent because it at least sells, offers to sell, and/or imports electronic devices (including but not limited to the Samsung Chromebook 3, Samsung Notebook 7 Spin, the Samsung Notebook 9 Spin, the Galaxy S3, Galaxy S5, Galaxy Note 5, Galaxy S5 Mini, Galaxy S6, Galaxy S6 Edge Plus, Galaxy S7, and Galaxy S7 Edge) containing infringing batteries in the United States, as well as other lithium secondary batteries that have a non-aqueous electrolyte as more fully described and claimed in the '809 patent.

65.    SEC has had actual knowledge of the '809 patent at least as early as the filing or service of this complaint on itself or another defendant.

66.    Since becoming aware of, or being willfully blind towards, the '809 patent, SEC's importing of, sales of, and offers to sell electronic devices containing batteries that infringe the '809 patent have, in addition to SEC's advertising materials and user manuals, have intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '809 patent (either literally or under the doctrine of equivalents) by SEC's customers and device end users in the United States, including at least SEA, who use, sell, offer to sell, or import said devices with infringing batteries.

67.    For at least for these reasons, SEC is liable for inducing infringement of the '809 patent, either literally or under the doctrine of equivalents.

## SEA is an Infringer of the '809 Patent

68.     SEA is a direct infringer of the '809 patent because it at least sells, offers to sell, and/or imports electronic devices (including but not limited to the Samsung Chromebook 3, Samsung Notebook 7 Spin, the Samsung Notebook 9 Spin, the Galaxy S3, Galaxy S5, Galaxy Note 5, Galaxy S5 Mini, Galaxy S6, Galaxy S6 Edge Plus, Galaxy S7, and Galaxy S7 Edge) containing infringing batteries in the United States, as well as other lithium secondary batteries that have a non-aqueous electrolyte as more fully described and claimed in the '809 patent.

69.     SEA has had actual knowledge of the '809 patent at least as early as the filing or service of this complaint on itself or another defendant.

70.     Since becoming aware of, or being willfully blind towards, the '809 patent, SEA's importing of, sales of, and offers to sell electronic devices containing batteries that infringe the '809 patent have, in addition to SEA's advertising materials and user manuals, have intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '809 patent (either literally or under the doctrine of equivalents) by SEA's customers and device end users in the United States, who use, sell, offer to sell, or import said devices with infringing batteries.

71.     For at least for these reasons, SEA is liable for inducing infringement of the '809 patent, either literally or under the doctrine of equivalents.

## J&J is an Infringer of the '809 Patent

72.     J&J is a direct infringer of the '809 patent because it at least sells, offers to sell, and/or imports infringing batteries (including but not limited to Samsung Galaxy S3, Galaxy S5, Galaxy S5 Mini, Galaxy S6, Galaxy S6 Edge Plus, Galaxy S7, and Galaxy S7 Edge replacement

batteries) in the United States, as well as other lithium secondary batteries that have a non-aqueous electrolyte as more fully described and claimed in the '809 patent.

73. J&J has had actual knowledge of the '809 patent at least as early as the filing or service of this complaint on itself or another defendant.

74. Since becoming aware of, or being willfully blind towards, the '809 patent, J&J's importing of, sales of, use of, and offers to sell batteries that infringe the '809 patent have, in addition to J&J's advertising materials, have intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '809 patent (either literally or under the doctrine of equivalents) by J&J's customers and device end users in the United States, who use, sell, or offer to sell said infringing batteries.

75. For at least for these reasons, J&J is liable for inducing infringement of the '809 patent, either literally or under the doctrine of equivalents.

## ESDI is an Infringer of the '809 Patent

76. ESDI is a direct infringer of the '809 patent because it at least sells, offers to sell, and/or imports infringing batteries (including but not limited to the ICR18650-32A, ICP4480A0A, PGF434292, and ICP596080C) in the United States, as well as other lithium secondary batteries that have a non-aqueous electrolyte as more fully described and claimed in the '809 patent.

77. ESDI has had actual knowledge of the '809 patent at least as early as the filing or service of this complaint on itself or another defendant.

78. Since becoming aware of, or being willfully blind towards, the '809 patent, ESDI's importing of, sales of, use of, and offers to sell batteries that infringe the '809 patent have, in addition to ESDI's advertising materials, have intentionally, actively, knowingly, and willfully

invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '809 patent (either literally or under the doctrine of equivalents) by ESDI's customers and device end users in the United States, who import, use, sell, or offer to sell said infringing batteries.

79. For at least for these reasons, ESDI is liable for inducing infringement of the '809 patent, either literally or under the doctrine of equivalents.

**COUNT II:  SECOND CLAIM FOR RELIEF**
**(INFRINGEMENT OF THE '001 PATENT)**

80. The Plaintiffs incorporate all of their previous allegations by the reference.

**The 001 Accused Products**

81. At least the following batteries (the "001 Accused Products") meet all the limitations, either literally or through the doctrine of equivalents, of at least Claim 9 of the '001 Patent:

    a. The ICR18650-30B battery (used by at least computer manufacturers and electronic device retailers) as shown in Exhibit P hereto;

    b. The ICP596080C battery (used by at least computer manufacturers and electronic device retailers) as shown in Exhibit Q hereto;

    c. PGF434292 battery (used in at least the Samsung Notebook 9 Spin) as shown in Exhibit R hereto;

    d. The Galaxy S6 battery as shown in Exhibit S hereto;

    e. The Galaxy S5 Mini battery as shown in Exhibit U hereto;

    f. Any other lithium secondary battery that has a non-aqueous electrolyte as more fully described and claimed in the '001 patent.

## Samsung SDI is an Infringer of the '001 Patent

82.    Samsung SDI is a direct infringer of the '001 patent because it at least sells, offers to sell, and/or imports at least the 001 Accused Products in the United States.

83.    Samsung SDI has had actual knowledge of, or was willfully blind towards, the '001 patent by way of communications with UBE as well as through Samsung SDI's own patents that reference the '001 patent.

84.    Since becoming aware of, or being willfully blind towards, the '001 patent, Samsung SDI's battery sales, offers to sell batteries, battery advertising, communications with, and management of Samsung SDI America has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '001 patent (either literally or under the doctrine of equivalents) by Samsung SDI America at least as set forth below.

85.    Since becoming aware of, or being willfully blind towards, the '001 patent, Samsung SDI's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with SEC has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '001 patent (either literally or under the doctrine of equivalents) by SEC at least as set forth below.

86.    Since becoming aware of, or being willfully blind towards, the '001 patent, Samsung SDI's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with SEA has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or

influenced the direct infringement of the '001 patent (either literally or under the doctrine of equivalents) by SEA at least as set forth below.

87.    Since becoming aware of, or being willfully blind towards, the '001 patent, Samsung SDI's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with computer manufacturers and electronic device retailers has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '001 patent (either literally or under the doctrine of equivalents) by computer manufacturers and electronic device retailers who use, import, sell, and/or offer to sell one or more of the 001 Accused Products.

88.    Since becoming aware of, or being willfully blind towards, the '001 patent, Samsung SDI's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with J&J and ESDI have intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '001 patent (either literally or under the doctrine of equivalents) by J&J and ESDI who import, sell, and/or offer to sell one or more of the 001 Accused Products.

89.    At least for these reasons, Samsung SDI is liable for inducing infringement of the '809 patent, either literally or under the doctrine of equivalents.

### Samsung SDI America is an Infringer of the '001 Patent

90.    Samsung SDI America is a direct infringer of the '001 patent because it at least sells, offers to sell, and/or imports at least the 001 Accused Products in the United States.

91.    Samsung SDI America has had actual knowledge of the '001 patent at least as early as the filing or service of this complaint on itself or another defendant.

92.    Since becoming aware of, or being willfully blind towards, the '001 patent, Samsung SDI America's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with Samsung SDI has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '001 patent (either literally or under the doctrine of equivalents) by Samsung SDI at least as set forth above with respect to Samsung SDI's direct and indirect infringement.

93.    Since becoming aware of, or being willfully blind towards, the '001 patent, Samsung SDI America's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with SEC has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '001 patent (either literally or under the doctrine of equivalents) by SEC at least as set forth below.

94.    Since becoming aware of, or being willfully blind towards, the '001 patent, Samsung SDI America's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with SEA has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '001 patent (either literally or under the doctrine of equivalents) by SEA at least as set forth below.

95.    Since becoming aware of, or being willfully blind towards, the '001 patent, Samsung SDI America's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with computer manufacturers and electronic device retailers has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged,

prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '001 patent (either literally or under the doctrine of equivalents) by computer manufacturers and electronic device retailers who use, import, sell, and/or offer to sell one or more of the 001 Accused Products.

96.      Since becoming aware of, or being willfully blind towards, the '001 patent, Samsung SDI America's battery sales, offers to sell batteries, battery advertising, communications with, and cooperation with J&J and ESDI has intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '001 patent (either literally or under the doctrine of equivalents) by J&J and ESDI who import, sell, and/or offer to sell one or more of the 001 Accused Products.

97.      For at least for these reasons, Samsung SDI America is liable for inducing infringement of the '001 patent, either literally or under the doctrine of equivalents.

## SEC is an Infringer of the '001 Patent

98.      SEC is a direct infringer of the '001 patent because it at least sells, offers to sell, and/or imports electronic devices (including but not limited to the Galaxy S5 Mini, Galaxy S6 and Notebook 9 Spin) containing infringing batteries in the United States, as well as other lithium secondary batteries that have a non-aqueous electrolyte as more fully described and claimed in the '001 patent.

99.      SEC has had actual knowledge of the '001 patent at least as early as the filing or service of this complaint on itself or another defendant.

100.     Since becoming aware of, or being willfully blind towards, the '001 patent, SEC's importing of, sales of, and offers to sell electronic devices containing batteries that infringe the

'001 patent have, in addition to SEC's advertising materials and user manuals, have intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '001 patent (either literally or under the doctrine of equivalents) by SEC's customers and device end users in the United States, including at least SEA, who use, sell, offer to sell, or import said devices with infringing batteries.

101.    For at least for these reasons, SEC is liable for inducing infringement of the '001 patent, either literally or under the doctrine of equivalents.

### SEA is an Infringer of the '001 Patent

102.    SEA is a direct infringer of the '001 patent because it at least sells, offers to sell, and/or imports electronic devices (including but not limited to the Galaxy S5 Mini, Galaxy S6 and Notebook 9 Spin) containing infringing batteries in the United States, as well as other lithium secondary batteries that have a non-aqueous electrolyte as more fully described and claimed in the '001 patent.

103.    SEA has had actual knowledge of the '001 patent at least as early as the filing or service of this complaint on itself or another defendant.

104.    Since becoming aware of, or being willfully blind towards, the '001 patent, SEA's importing of, sales of, and offers to sell electronic devices containing batteries that infringe the '001 patent have, in addition to SEA's advertising materials and user manuals, have intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '001 patent (either literally or under the doctrine of equivalents) by SEA's customers and device end users in the United States, who use, sell, offer to sell, or import said devices with infringing batteries.

105.    For at least for these reasons, SEA is liable for inducing infringement of the '001 patent, either literally or under the doctrine of equivalents.

## J&J is an Infringer of the '001 Patent

106.    J&J is a direct infringer of the '001 patent because it at least sells, offers to sell, and/or imports infringing batteries (including but not limited to the Galaxy S5 Mini and Galaxy S6 replacement batteries) in the United States, as well as other lithium secondary batteries that have a non-aqueous electrolyte as more fully described and claimed in the '001 patent.

107.    J&J has had actual knowledge of the '001 patent at least as early as the filing or service of this complaint on itself or another defendant.

108.    Since becoming aware of, or being willfully blind towards, the '001 patent, J&J's importing of, sales of, use of, and offers to sell batteries that infringe the '001 patent have, in addition to J&J's advertising materials, have intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '001 patent (either literally or under the doctrine of equivalents) by J&J's customers and device end users in the United States, who at least use, sell, or offer to sell said infringing batteries.

109.    For at least for these reasons, J&J is liable for inducing infringement of the '001 patent, either literally or under the doctrine of equivalents.

## ESDI is an Infringer of the '001 Patent

110.    ESDI is a direct infringer of the '001 patent because it at least sells, offers to sell, and/or imports infringing batteries (including but not limited to the ICR18650-30B, PGF434292, and ICP596080C battery) in the United States, as well as other lithium secondary batteries that have a non-aqueous electrolyte as more fully described and claimed in the '001 patent.

111.    ESDI has had actual knowledge of the '001 patent at least as early as the filing or service of this complaint on itself or another defendant.

112.    Since becoming aware of, or being willfully blind towards, the '001 patent, ESDI's importing of, sales of, use of, and offers to sell batteries that infringe the '001 patent have, in addition to ESDI's advertising materials, have intentionally, actively, knowingly, and willfully invited, enticed, lead on, influenced, encouraged, prevailed on, moved by persuasion, caused, directed, and/or influenced the direct infringement of the '001 patent (either literally or under the doctrine of equivalents) by ESDI's customers and device end users in the United States, who at least use, sell, or offer to sell said infringing batteries.

113.    For at least for these reasons, ESDI is liable for inducing infringement of the '001 patent, either literally or under the doctrine of equivalents.

## DAMAGES

114.    The Plaintiffs incorporate all of their previous allegations by the reference.

115.    The Defendants' acts of infringement of the '809 and '001 patents as alleged above have injured Plaintiffs and thus Plaintiffs are entitled to recover damages adequate to compensate it for its lost profits from that infringement, including its costs, and pre-judgment and post-judgment interest per 35 U.S.C. § 284.

116.    Additionally, and in the alternative, the Defendants' acts of infringement of the '809 and '001 patents as alleged above have injured Plaintiffs and thus Plaintiffs are entitled to recover damages which in no event can be less than a reasonable royalty, including its costs, and pre-judgment and post-judgment interest pursuant to 35 U.S.C. § 284.

## WILLFUL INFRINGEMENT

117.    The Plaintiffs incorporate all of their previous allegations by the reference.

118.    Samsung SDI has infringed the '809 and '001 patents despite an objectively high likelihood that their actions constituted infringement of these valid patents.

119.    Samsung SDI knew or should have known this objectively high likelihood, at least because the '809 and '001 patents have been the subject of communications within Samsung prior to the filing of this suit.

120.    Because Samsung SDI willfully infringed the '809 and '001 patents, Plaintiffs are permitted under 35 U.S.C. § 284 to recover treble the amount of actual damages sustained by the Plaintiffs.

## EXCEPTIONAL CASE

121.    The Plaintiffs incorporate all of their previous allegations by the reference.

122.    This case is exceptional per 35 U.S.C. § 285 because of at least Samsung SDI's willful infringement.

123.    An award of Plaintiffs' attorneys' fees in this action is therefore proper.

## DEMAND FOR JURY TRIAL

124.    Plaintiffs hereby demands a jury trial on all claims and issues triable of right by a jury, including Defendants' counterclaims and affirmative defenses, if any.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Advanced Electrolyte Technologies LLC and UBE Industries, Ltd. pray for entry of judgment:

A.    That each of the Defendants have infringed one or more claims of both the '809 and '001 patents.

B.    That Defendants account for and pay to Plaintiffs all damages caused by the infringement of the '809 and '001 patents, including Plaintiffs' lost profits, which by statute can be no less than a reasonable royalty;

C.       That the Court increase the damages up to three times the amount found or assessed;

D.       That Plaintiffs be granted pre-judgment and post-judgment interest on the damages caused to them by reason of Defendants' infringement of the '809 and '001 patents;

E.       That the Court declare this case exceptional, in favor of Plaintiffs, under 35 U.S.C. § 285 and that Plaintiffs be granted their attorneys' fees in this action;

F.       That costs be awarded to Plaintiffs;

G.       That the Defendants be permanently enjoined from infringing the '809 and '001 patents;

H.       That Plaintiffs be granted such other and further relief that is just and proper under the circumstances.

Dated: January 18, 2016               Respectfully submitted,

                          /s/ Matthew J.M. Prebeg
                          Matthew J.M. Prebeg (Texas Bar No. 00791465)
                          Stephen W. Abbott (Texas Bar No. 00795933)
                          Christopher M. Faucett (Texas Bar No. 00795198)
                          **PREBEG, FAUCETT & ABBOTT PLLC**
                          8441 Gulf Freeway, Suite 307
                          Houston, Texas 77017
                          Telephone:      (832) 742-9260
                          Facsimile:       (832) 742-9261
                          Email:           mprebeg@pfalawfirm.com
                                        sabbott@pfalawfirm.com
                                        cfaucett@pfalawfirm.com

                          Alan D Albright (Texas Bar No. 00973650)
                          Chad Ennis (Texas Bar No. 24045834)
                          **BRACEWELL LLP**
                          111 Congress Avenue, Suite 2300
                          Austin, Texas 78701
                          Tel.:            (512) 472-7800
                          Facsimile:       (800) 404-3970
                          Email:           alan.albright@bracewelllaw.com
                                        chad.ennis@bracewelllaw.com